IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHARON E. PRUETT,

    Plaintiff,

vs.                                                                                      No. 1:21-CV-00635-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff Sharon E. Pruett's Motion to Reverse and Remand for a Hearing with Supporting Memorandum (Doc. 17), dated January 10, 2022, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Pruett is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Commissioner responded to Pruett's motion on April 11, 2022 (Doc. 21), and Pruett filed a reply brief on April 25, 2022 (Doc. 22). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Pruett's motion and remand this case back to the SSA for proceedings consistent with this opinion.

**I. PROCEDURAL POSTURE**

On February 18, 2015, Pruett filed an initial application for disability insurance benefits and supplemental security income. (*See* Administrative Record ("AR") at 90-91). Pruett alleged that she had become disabled on March 1, 2014, due to nerve damage, depression, and anxiety.

(*Id.* at 92). Her application was denied at the initial level on September 15, 2015 (*id.* at 90-91), and at the reconsideration level on November 1, 2016 (*id.* at 115-16). After conducting a hearing (*see id.* at 55-87), ALJ Lillian Richter concluded that Pruett was not disabled prior to June 24, 2017, but became disabled on that date (*see id.* at 32-47). The Appeals Council denied review, and in doing so declined to consider additional evidence from a consultative psychological examiner that Pruett obtained after the ALJ's decision. (*Id.* at 1-4).

Pruett sought judicial review of the Commissioner's finding of nondisability prior to June 24, 2017, arguing among other things that the Appeals Council erred in rejecting the additional evidence. (*Id.* at 1311-12); *see also* Complaint, *Pruett v. Saul*, No. 1:19-cv-00817 SMV, ECF No. 1 (D.N.M. Sept. 6, 2019). On October 22, 2020, United States Magistrate Judge Stephan M. Vidmar granted Pruett's motion on that ground and remanded the matter to the Commissioner for further proceedings. (*See* AR at 1313-24); *see also Pruett v. Saul*, No. 1:19-cv-00817 SMV, 2020 WL 6196175 (D.N.M. Oct. 22, 2020). The Appeals Council subsequently affirmed the ALJ's finding of disability beginning on June 24, 2017, vacated her finding of nondisability prior to that date, and remanded the case to the ALJ for further proceedings. (*See* AR at 1328).

At a second hearing held by the ALJ on April 21, 2021, Pruett was represented by counsel and testified, as did a vocational expert. (*See id.* at 1247-75). On May 20, 2021, the ALJ again determined that Pruett was not disabled prior to June 24, 2017. (*Id.* at 1221-38). Pruett did not file exceptions with the Appeals Council, *see generally* 20 C.F.R. § 404.984(a), and instead chose to again seek judicial review by filing the complaint in this case on July 12, 2021. (*See* Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a

sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Pruett's claim pursuant to the five-step sequential evaluation process. (AR at 1222-23). First, she found that Pruett met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her alleged onset date of March 1, 2014. (*See id.* at 1223). The ALJ then found at step two that Pruett suffered from a number of nonsevere impairments as well as the following severe impairments:

> generalized anxiety disorder, adjustment disorder with mixed anxiety and depressed mood, major depressive disorder, post-traumatic stress disorder (PTSD), somatic symptom disorder with predominant persistent pain, degenerative disc disease of the lumbar spine with bulging discs and facet arthropathy, degenerative disc disease of the thoracic spine and cervical spine, lumbosacral neuritis, chronic sacroiliac joint dysfunction, bilateral sacroiliac osteoarthritis, idiopathic neuropathy, diabetes mellitus, acquired inequality of length of pelvic region and thighs, fatigue[,] and fibromyalgia.

(*Id.* at 1224) (internal citation omitted). At step three, the ALJ concluded that Pruett did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 1224-28).

Moving to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Pruett's own subjective symptom evidence. (*See id.* at 1228-36). Having done so, the ALJ concluded that for the relevant period, Pruett possessed an RFC to perform light work with certain exertional and nonexertional modifications. (*See id.* at 1228). Based on this RFC, the ALJ found that Pruett was unable to perform any past relevant work during the relevant period. (*See id.* at 1236).

Moving to step five, the ALJ determined that Pruett had been able to perform other jobs existing in significant numbers in the national economy from her alleged onset date through June

5

23, 2017. (*See id.* at 1237-38). The ALJ therefore concluded that Pruett's work was not precluded by her RFC, and that she was not disabled, through that period. (*See id.* at 1238).

## IV. DISCUSSION

Pruett contends that the ALJ improperly evaluated medical opinion evidence provided by two consultative examining medical sources (*see* Doc. 17 at 7-15) and that the ALJ failed to evaluate her subjective symptom allegations in accordance with controlling legal standards (*see id.* at 15-25). The Court agrees that the ALJ failed to properly apply governing legal standards when evaluating the medical opinions of one of her examining medical sources. Because a reevaluation of that source's opinions may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Pruett's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cor. 2003).

Consultative examiner Athanasios Manole, M.D., evaluated Pruett on October 8, 2016. (*See* AR at 687-696). In the course of that evaluation, Dr. Manole collected Pruett's subjective reports of symptoms and medical history and performed his own examination. (*See id.*). After doing so, Dr. Manole opined that Pruett's back problems limited her to sitting and standing for twenty minutes at a time each, "very limited" walking, and lifting no more than one pound at a time. (*See id.* at 688). He also described Pruett as having "severe" limitations in walking, lifting, carrying, bending, and squatting, as well as "moderate" limitations in sitting, standing, reaching, and feeling. (*See id.* at 695). The ALJ concluded that these opinions were not supported by Dr. Manole's "generally benign examination findings" and inconsistent with other record evidence. (*See id.* at 1231-32).

When weighing medical opinions provided by a medical source such as a consultative examiner, the ALJ must consider multiple factors, including the extent to which

the source's opinions are supported by relevant evidence and the consistency of the medical opinion with the record. *See* 20 C.F.R. § 404.1527(c)(3)-(4).[1] When addressing any of these factors, the ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Moreover, the ALJ may not "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Rather, an ALJ must provide "appropriate explanations for accepting or rejecting" medical opinions. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[2]

Pruett contends that the ALJ ignored the valid reasons given by Dr. Manole for his opinions when concluding that those opinions were not adequately supported. (*See* Doc. 17 at 9-10). The Commissioner responds that the ALJ sufficiently articulated findings by Dr. Manole that were inconsistent with his opinions, such as his finding of normal tandem walk, an ability to hop on each foot, and a negative straight-leg test. (*See, e.g.*, Doc. 21 at 13); (*see also* AR at 692) (cited findings). The Commissioner is not entirely wrong; the ALJ did properly enumerate

---

[1] Pruett's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.920c do not apply to this proceeding. Although Pruett applied for benefits under both Title II and Title XVI, the Court hereinafter cites only to the regulations promulgated under Title II and does not also cite to the parallel regulations under Title XVI.

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. See *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference). Although SSR 96-5p has been rescinded for claims filed on or after March 27, 2017, *see* SSR 96-2p, 2017 WL 3928298, at *1 (Mar. 27, 2017), that guidance remains entitled to deference here because Pruett's claims were filed before that date.

certain findings from Dr. Manole that could be regarded as inconsistent with his assessment of moderate and severe limitations. (*See, e.g.*, AR at 1232). However, the ALJ failed to also address Dr. Manole's findings that were facially consistent with his opinions, including observations that Pruett suffered "[s]hooting back pain after 20 min[utes]" of sitting or standing, that walking was limited to "a few hundred feet" due to spasms and "burning shooting pain in [the] left leg" occurring after longer walks, that Pruett could lift or carry "only a pound or so" without suffering arm pains or spasms, and that bending and squatting were limited due to "severe pain" and weakness in the lower back. (*See* AR at 695); (*see also id.* at 688) (citing "back problems" as reason for opinions no sitting, standing, walking, and lifting limitations). The ALJ's observation that Dr. Manole found, for example, that Pruett could squat or rise one time or hop on each foot (*see id.* at 1232) did not relieve her of the obligation to discuss findings supporting the conclusion that such activities were still limited before rejecting those conclusions. *See, e.g.*, *Carpenter*, 537 F.3d at 1265 (ALJ may not cherry-pick evidence in support of a nondisability finding while ignoring evidence that supports a disability determination).

Similar problems permeate the ALJ's finding that Dr. Manole's opinions were inconsistent with record evidence. For instance, although the ALJ concluded that Pruett's "pain was fairly well controlled" when discounting Dr. Manole's opinions (AR at 1232), this conclusion finds backing in only one of the medical records she cited for this assertion (*see id.* at 723),[3] while the remaining cited records appear to support a contrary conclusion (*see, e.g.*, *id.* at 377) (noting "pain is not relieved" by current medication and back pain at "9/10"); (*id.* at 448-50) (noting worsening pain resulting from physical therapy and diagnosing chronic low back

---

[3] For the reasons cited by the Commissioner (*see* Doc. 21 at 16), the Court generally disagrees with Pruett's argument (*see* Doc. 17 at 11) that the December 2017 records noting "fairly well controlled" pain are not chronologically pertinent. However, the presence of one record in support of the ALJ's assertion did not relieve the ALJ of her obligation to discuss medical evidence supporting a different conclusion.

pain despite normal gait); (*id.* at 535) (noting Pruett's report of tolerance to then-current pain medication).[4] Likewise, while the ALJ cited records of an April 2014 lumbar MRI purportedly showing "generally mild to moderate findings on imaging" (*id.* at 1232) (citing, *e.g.*, *id.* at 377, 404), the cited records themselves present a more complicated picture, showing not only "mild to moderate" degenerative changes but also "L5-S1 bulging disc with broad-based midline herniation" and "[e]xtensive parapelvic cysts" that Pruett's providers thought might be "contributing to [her] low back pain"[5] (*see id.* at 404); (*see also id.* at 571-72) (actual MRI results). Thus, while there were indeed some mild to moderate findings in the 2014 MRI results, the additional findings that the ALJ failed to address when weighting Dr. Manole's opinions merited consideration, given that they appeared on their face to align with his conclusions regarding the severity of her back pain and associated limitations. Finally, at least one of the records cited by the ALJ does not appear to be meaningfully inconsistent with Dr. Manole's opinion or even relate to the relevant period (*cf.* AR at 420), a point now conceded by the Commissioner (*see* Doc. 21 at 15-16). Therefore, as was the case with the ALJ's conclusions

---

[4] Elsewhere in her opinion, the ALJ did cite two other records in support of the assertion that Pruett's "back pain improves with medication and injections." (*See* AR at 1230) (citing *id.* at 577, 1049) ("7F/8; 17F/7"). However, these two records provide scant support for the conclusion that Pruett's pain is "fairly well controlled." The first record observed only that one medication was working better than a previous one, while still recording that Pruett registered positive for low back pain and continuing to pursue additional treatments to address gluteal pain. (*See id.* at 577-78). And although the second cited record noted some improvement following an injection of pain medication, it also noted trouble stabilizing Pruett on this medication regimen due to balance issues and problems with severe pain radiating through her left extremities, to the point that she had been recently hospitalized out of concern she was having a stroke. (*See id.* at 1048-49). Other records also recorded the apparent ineffectiveness of Pruett's more conservative treatment earlier in the relevant period and her provider's repeated efforts to find a more effective regimen. (*See, e.g.*, AR at 945) (ordering new MRI given "ongoing lumbar back pain despite conservative treatment").

[5] The ALJ concluded at step three that Pruett's kidney cysts, by themselves, amounted to a nonsevere impairment since the record did not show related abdominal pain or ongoing treatment for that condition. (*See* AR at 1224). But of course, the fact that a condition is found to be nonsevere at step three does not necessarily mean that the condition is not probative as to a claimant's limitations and RFC. *See, e.g.*, SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."). This is particularly the case where, as here, providers express a suspicion that the condition might be exacerbating other conditions that themselves cause limitations. (*See, e.g.*, AR at 404).

regarding the supportability of Dr. Manole's opinions, the ALJ's determinations regarding the consistency of those opinions with the record evidence suffer from improper "pick[ing] and choos[ing]" from among the evidence. *See Carpenter*, 537 F.3d at 1265.

The Commissioner primarily contends that Pruett, by pointing to evidence that the ALJ seems to have ignored or mischaracterized, is seeking to have the Court "reweigh" evidence that she cited in support of her weighting of Dr. Manole's opinion. (*See, e.g.*, Doc. 21 at 14); (*see also id.* at 16) (citing evidence supporting ALJ's characterization of record as showing "normal gait" and "walking regularly"). To be sure, the fact that an ALJ and a claimant (or a Court) could reach different conclusions from the same record is not an adequate reason to set aside the ALJ's determinations regarding medical opinion evidence. But here, the key problem is not the ALJ's weighting of the evidence, but her failure to address important evidence that appeared on its face to undermine her weighting of Dr. Manole's opinions, while only pointing to evidence—often in the same records—that supported her findings. *See Carpenter*, 537 F.3d at 1265. Although an ALJ is not required to adopt a claimant's interpretation of the record, she may not simply cite the evidence in support of her own interpretation; rather, she must show that she considered the probative evidence supporting the claimant's interpretation so that the claimant (and any subsequent reviewing court) can understand her reasons for rejecting that evidence. *See Clifton*, 79 F.3d at 1010. The ALJ's failure to do so here amounts to impermissible legal error.

More narrowly, the Commissioner argues that the ALJ's characterization of "generally mild to moderate findings on imaging"—which she pointed to as evidence of inconsistency between the record and Dr. Manole's opinions—was supported by another portion of the ALJ's decision discussing other imaging results. (*See* Doc. 21 at 15). However, most of the imaging results cited in that passage are focused on other parts of Pruett's musculoskeletal system, such

as her sacrum vertebrae and her pelvis, and do not on their face eliminate the probative value of the 2014 lumbar MRI findings that the ALJ failed to adequately address when weighing Dr. Manole's opinions. (*See id.* at 1230). And although a second lumbar MRI[6] was performed on Pruett in December 2015, the results of that imaging catalogued essentially the same findings noted in the April 2014 MRI results, including disc bulge at L1-2, L2-3, and L5-S1, as well as "extensive/numerous . . . renal cysts." (*See id.* at 1039-40) (December 2015 MRI results); (*cf. id.* at 571-72) (April 2014 MRI results). In fact, the later results could be construed as providing additional evidence of problems with Pruett's back. *Compare* (*id.* at 571) (noting largely "unremarkable" findings at L4-5), *with* (*id.* at 1040) (recording "[d]isc bulge with flattening of the ventral thecal sac" at L4-5). If anything, then, the fact that *both* lumbar MRIs evidenced more significant findings than those discussed by the ALJ when evaluating Dr. Manole's opinions only underscores the need for the ALJ to explain why those findings do not undermine the weighting she assigned his opinions.

On remand, if the ALJ continues to find that Dr. Manole's opinions are unsupported by his examination results despite the findings that she failed to address in the first instance, she will explain why this is the case. Similarly, if the ALJ continues to conclude that Dr. Manole's

---

[6] Although the ALJ also discussed a third "lumbar MRI in 5/2014," her support for this discussion came not from any MRI results themselves, but from a report prepared by a medical provider who was addressing a separate workers' compensation claim. (*See* AR at 1230) (citing to "21F/6," AR at 1204). While that report described an "MRI from 05/01/2014" (*see id.*), the record does not contain any actual MRI results from that date or any other indication that a second MRI was performed exactly one month after the first one. (*Cf. id.* at 943, 945) (November 2015 record noting Pruett "did also have a MRI of her back . . . from over a year ago" before discussing the April 1, 2014 MRI). Moreover, the provider's description of the alleged May 1, 2014 MRI corresponds fairly closely to the results of the April 1, 2014 MRI (*see id.* at 571-72), albeit in language that minimizes those findings more than Pruett's other providers. *Compare* (*id.* at 1204) (describing "a little bit of a bulge at L5-S1" and "dehydration of the L2-L3 disc and also the L5-S1 disc"), *with* (*id.* at 571) (noting bulge as well as "desiccation at the L2-3 disc space" and "mild desiccation at L3-4 and L5-S1 disc spaces"). In short, it appears that the April 2014 and May 2014 MRI are in fact one and the same, a fact that the ALJ apparently failed to recognize. But even if this is not the case, the Court concludes that the results of the "two" MRIs were similar enough that the purported May 2014 results do not undermine the more significant findings from April 2014.

opinions are inconsistent with the record as a whole, she will explain why the record findings in support of Dr. Manole's opinions do not support the opposite conclusion.

## V. Conclusion

The ALJ erred in his review of Pruett's application for disability insurance benefits and supplemental security income by failing to adequately evaluate medical opinion evidence in accordance with controlling legal standards. Accordingly, Pruett's Motion to Reverse and Remand for a Rehearing (Doc. 17) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**